THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SCOTT NILSSON, Defendant-Appellant.

First District (4th Division) No. 1—89—3500

Opinion filed June 25, 1992.

Michael J. Pelletier and Sally Swiss, both of State Appellate Defender's
Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Brian Clauss, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Scott Nilsson, was indicted on charges of robbery, home invasion, residential burglary, and first degree murder. The robbery and home invasion charges were nol-prossed by the State. Following a jury trial in the circuit court of Cook County, defendant was found guilty of residential burglary (Ill. Rev. Stat. 1987, ch. 38, par. 19—3) and first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1). He was sentenced to 35 years in the Department of Corrections.

At issue on appeal is (1) whether defense counsel's trial strategy amounted to a denial of defendant's sixth amendment right to effective assistance of counsel; (2) whether defendant's confession was made after an invalid *Miranda* waiver; and (3) whether the trial court's response to the jury question during deliberation was improper.

We affirm.

Prior to trial, defendant filed a motion to suppress his confession. He argued that due to his learning disability and communication problems, he was unable to knowingly and voluntarily waive his *Miranda* rights. The court denied the motion.

Detective Lawrence Thezan testified that his assignment to the homicide investigation of Linda Sanborn took place on November 16, 1987. He was informed by Cindy Ryan, who can neither speak nor hear, that Valerie Feliciano, Scott Nilsson, Anne Sfondilias, and Daniel Lord, might have information about the homicide. With the assistance of Officer David Levin, an interpreter for the hearing impaired, all four were interviewed.

Defendant was interviewed by Officers Levin and Thezan on November 17, 1987. He indicated that he wished to talk and neither showed nor stated any difficulty in understanding the sign language. On cross-examination, Levin admitted that some deaf people may answer that they understand even when they do not.

Patricia Miripol, a clinical psychologist, testified as an expert witness for the defense. Her opinion was that defendant did not understand his *Miranda* rights because defendant's abstract verbal ability was deficient. Particularly important was Miripol's opinion that defendant did not understand that he could be charged with murder even though he was "not the actual doer of the deed." However, on cross-examination, Miripol found defendant fit to stand trial. He

scored high in reference to nonverbal abilities. She further testified that with time and effort, defendant could be taught the meaning of *Miranda* rights.

Dr. Albert Stipes, a psychiatrist, also gave his opinion on defendant's comprehension. Essentially, his findings were the same as those of Miripol. In his opinion, defendant had no real understanding of his *Miranda* rights but was fit to stand trial. Janice Nilsson, defendant's mother, also testified that her son had a learning disability which interfered with his comprehension and communication skills.

Officer Levin testified that he used sign language to convey the *Miranda* warnings to defendant. Thereafter, defendant admitted his involvement in the murder of the victim. The officer testified that defendant admitted making plans with Lord to break into the victim's apartment and steal some things. Defendant told him that he walked in behind Lord. Once inside, they found the victim sleeping and defendant held her down and hog-tied her with a rope that they brought with them. In the meantime, Lord began striking the victim all over her body. He then held a pillow over her face. When she passed out, defendant and Lord began taking things from the apartment. They drove these items over to Sfondilias' house. She later turned this property over to the police. Sfondilias was defendant's girl friend at the time of the murder, and his wife at the time of the trial. She testified that the victim's former roommate was Feliciano, who moved out on November 3, 1987, over a dispute about the rent. On November 7, between 2 and 3 a.m., Sfondilias, Feliciano, Lord, and defendant drove two cars to Sanborn's apartment. Sfondilias testified that the previous evening this same group had met at Cindy Ryan's apartment. However, Ryan did not accompany them to the victim's apartment. That same day, Lord and defendant had gone to Ace Hardware to make a copy of Feliciano's key to the victim's apartment.

Sfondilias further testified that defendant and Lord had planned to steal some things from the apartment if Sanborn was not home. She noticed that both men were wearing gloves and that defendant took some rope out of the car and gave it to Lord. They were in the victim's apartment for approximately two hours before they returned to the cars with various items from the apartment. Defense witness Feliciano testified that they stayed in the apartment three to four hours. Defendant and Lord loaded the personal items into the two cars. Defendant and Sfondilias drove in one car; Lord and Feliciano drove in the other one. They all went to a park where Feliciano told Sfondilias that Lord had killed the victim. Deputy Chief Medical Ex-

aminer of Cook County Robert Kirschner testified that the cause of death was asphyxiation due to suffocation.

The State moved for admission of its evidence and rested. Defendant's motion for a directed verdict was denied.

The defense called three witnesses. Valerie Feliciano testified that she moved out of the apartment after an argument with the victim. She testified that Lord had a key to the apartment and that he admitted to killing the victim. Russell Nilsson, defendant's father, testified that defendant was deaf from birth and communicates through sign language. The testimony of Janice Nilsson, defendant's mother, was the same as that of his father. She also stated that defendant had never been convicted of a felony.

Despite defense counsel's objection, the judge answered a jury question concerning the instructions. Jury deliberations concluded, and defendant was found guilty of residential burglary and first degree murder. The judge denied defendant's motion for a new trial.

The first issue on appeal is whether defendant was afforded effective assistance of counsel pursuant to the sixth amendment. Defendant argues that the trial strategy set forth by counsel was done without his consent and amounted to no representation. We disagree.

The standard for determining whether there has been ineffective assistance of counsel is essentially a two-pronged inquiry. First the defendant must demonstrate that counsel's representation fell below what would objectively be considered reasonable. Second, the defendant must demonstrate the reasonable probability that had it not been for counsel's errors, there would have been a different outcome at the close of the proceedings. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) The *Strickland* test was adopted by the Illinois Supreme Court in *People v. Albanese* (1984), 104 Ill. 2d 504.

■ Here, defendant has failed to show that but for counsel's actions the trial would have ended differently. The officers who interviewed defendant testified that he was willing to talk to them. One of the officers was proficient in sign language and defendant indicated that he fully understood the officer's translation of the interview. At trial, there was corroborating testimony concerning defendant's role in the murder. One of the witnesses took the items brought out of the apartment by Lord and defendant to the police. These items were later identified by the victim's mother as belonging to the victim. The defendant's specific description of how the crime unfolded was consistent with the condition in which the body was found and with the

coroner's opinion as to the cause of death. Thus, defendant has not met the burden of the second prong of the *Strickland* test.

Returning to the first prong of *Strickland*, defendant must show that counsel's representation fell below what would be considered reasonable. Reasonable representation means competency, not perfection. (*People v. McNutt* (1989), 146 Ill. App. 3d 357.) In the instant case, the overwhelming nature of defendant's guilt left few options for defense counsel in determining a trial strategy. In light of *Strickland*, this panel has stated the following:

> "When evaluating ineffective representation claims, courts ordinarily will not extend their review to areas involving the exercise of judgment, trial tactics or strategy [citation], as even the best attorneys would not necessarily agree on the same strategy for a particular case." *People v. Potthast* (1991), 219 Ill. App. 3d 714, 720.

Defense counsel made a decision to proceed with a trial strategy that conceded defendant's guilt with the hope of gaining jury sympathy and mitigating punishment. Defendant argues that this resulted in his having no defense and, therefore, he contends that he received ineffective assistance of counsel. He finds support in *People v. Hattery* (1985), 109 Ill. 2d 449, which states the following:

> "Where 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.' " (*People v. Hattery*, 109 Ill. 2d at 461, quoting *United States v. Cronic* (1984), 466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104 S. Ct. 2039, 2047.)

Yet, more recently our supreme court has said that *Hattery* must be narrowly construed. The rationale behind a narrow interpretation is as follows:

> "If we were to accept an automatic ineffectiveness rule, there would be the danger that an unscrupulous defense attorney, especially in a death penalty case, would deliberately concede his client's guilt in order to lay the groundwork for a later reversal. It is even possible that client and counsel would conspire to this end. For these reasons the rule in *Hattery* must be narrowly construed." (*People v. Johnson* (1989), 128 Ill. 2d 253, 269.)

Finally counsel's conduct must be considered in its totality in a given case. *People v. Ayala* (1986), 142 Ill. App. 3d 93.

Here, not only was counsel's conduct appropriate but it was done with the consent of defendant. Further, defendant's consent was reit-

erated when questioned at length by the court. The colloquy went as follows:

"THE COURT: Mr. Nilsson, you understand by your attorney's opening statement he is conceding to the jury that you have committed the offense of residential burglary. I could sentence you to the Illinois State Penitentiary up to seven years. Do you understand that, sir?

MR. CUOMO: Fifteen, Judge.

THE COURT: Excuse me, four to fifteen years. Do you understand that? I just want to explain it to him. Do you understand that, Mr. Nilsson?

THE INTERPRETER: Yes.

THE COURT: Okay. You understand this is your attorney's trial strategy at this time. Do you understand that sir?

THE INTERPRETER: Yes.

THE COURT: Do you understand further by him agreeing that you were there at the time of the residential burglary that a murder was committed. He's basically conceding to the jury that you committed the murder by way of accountability and I could sentence you to life in the penitentiary. Do you understand that, sir?

THE INTERPRETER: Yes.

THE COURT: I believe, Mr. Meyers, that this is your trial strategy. Is that correct?

MR. MEYERS [DEFENSE COUNSEL]: I'm simply stating what the witnesses might testify.

THE COURT: I understand that but pursuant to a case that came down from the Illinois Supreme Court, I must advise your client of this and have him agree to allow you to do it. Do you understand that? Because it's tantamount to pleading him guilty. Do you understand that?

MR. MEYERS: Yes, your Honor, I understand.

THE COURT: I don't care if you understand. I want Mr. Nilsson to understand. Do you understand that Mr. Nilsson?

THE INTERPRETER: Yes.

THE COURT: Okay. And you agree to it at this time. Is that correct, sir?

THE INTERPRETER: Yes."

A recent supreme court case, *People v. Ganus*, commented on a similar strategy that was done with that defendant's consent. The relevant commentary is as follows:

"In the instant case, on the other hand, defendant's counsel's trial strategy was consented to by defendant. What the instant case presents is a situation where the defendant literally had no defense. Evidence of his guilt was overwhelming. His counsel conceived a compulsion defense, which, though not a legal defense, could or might have persuaded a jury not to convict. Jury nullification is always a possibility. It is not inconceivable that a compulsion defense might have evoked empathy, compassion or understanding and sympathy in the minds of the jurors. It is a truism that if a man is drowning, he will grasp at a straw that comes floating by. A weak or insufficient defense does not indicate ineffectiveness of counsel in a case where a defendant has no defense." *People v. Ganus* (1992), 148 Ill. 2d 466, 473-74.

In the case at bar, even assuming possible errors by counsel, there was overwhelming evidence against defendant, including his own confession. Therefore, we find that defense counsel's overall representation, including his trial strategy, afforded defendant effective assistance of counsel.

■ Defendant's second argument on appeal is that his confession should have been suppressed because it was made after an invalid *Miranda* waiver. He argues that his learning disability made him unable to understand *Miranda* rights and unable to comprehend the significance of a confession. We disagree.

The determination of the competency of a confession is a task solely for the trial court. (*People v. Redd* (1990), 135 Ill. 2d 252, 292, citing *People v. Carter* (1968), 39 Ill. 2d 31, 38.) "Findings by the circuit court on the question of voluntariness of a confession will not be disturbed by a court of review unless they are against the manifest weight of the evidence." *Redd*, 135 Ill. 2d at 292-93.

To determine whether a defendant understood and knowingly waived his rights by a preponderance of the evidence, a court must examine the totality of the circumstances. (*People v. Gore* (1983), 116 Ill. App. 3d 780, 784, citing *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) "Whether a defendant intelligently waived his right to counsel depends, in each case, on the particular facts and circumstances of that case, including the defendant's background, experience, and conduct." (*People v. Bernasco* (1990), 138 Ill. 2d 349, 368.) Further, this panel has specifically stated the following:

"The intelligence of the defendant is not controlling, but is only one factor relevant to a determination of whether the defend-

ant's statements were voluntary." *People v. Negron* (1991), 220 Ill. App. 3d 754, 766.

In applying the above legal principles to the instant case, we find that the trial court's ruling was not against the manifest weight of the evidence. The record indicates that defendant was interviewed by an officer who was a certified sign language interpreter. Defendant was specifically asked about his understanding of each *Miranda* right. After each one, he indicated that he understood what had just been signed to him.

The defense presented two experts who testified as to defendant's communication and comprehension problems. Their opinions were that these problems interfered with his ability to understand his *Miranda* rights. However, on cross-examination, both experts testified that defendant understood the nature of the proceedings against him. Further, defendant was found fit to stand trial.

Defendant cites *People v. Bernasco* (1990), 138 Ill. 2d 349, to support his argument that he did not have the intellectual capacity to understand his *Miranda* rights. However, that case is distinguishable from the case at bar. In *Bernasco*, the defendant was 17 years old and living at home with his father. In the instant case, defendant was married with a child at the time of trial. Thus, defendant is most similar to the defendant in *People v. Long* (1991), 217 Ill. App. 3d 940. There, the court also had the benefit of expert testimony. However, as in our case, the trial court found the testimony of the police officer more credible. There is no requirement that a trial court accept defendant's experts' conclusions of fact. *People v. Phillips* (1992), 226 Ill. App. 3d 878, 888.

The trial court heard testimony from the police, defendant's mother, and two doctors. The court was also free to consider defendant's independent lifestyle as a married man with a child, and defendant's prior contact with the criminal justice system. The totality of these circumstances led the trial court to conclude that defendant's waiver of his *Miranda* rights was voluntary and knowingly and intelligently made. We find that the court's ruling is not against the manifest weight of the evidence.

■ The third issue on appeal is whether the trial court improperly answered a jury question during deliberations which prejudiced defendant.

A recent case quoted the general rule as to clarification of instructions. The rule is as follows:

" 'If jurors differ as to the instructions they should come into court and have them repeated, or if they wish more informa-

tion as to the law they should request it of the court, and it has been held that it is not only the right but the duty of the court to reinstruct on any question of law arising from the facts on which the jury say they are in doubt, and on which they ask further instructions. Where the jury make their difficulties explicit, the judge should clear them away with concrete accuracy; and where the question asked is not clear, it is the duty of the court to seek clarification.' " (*People v. Shannon* (1990), 206 Ill. App. 3d 310, 316-17, quoting *People v. Harmon* (1968), 104 Ill. App. 2d 294, 301, 244 N.E.2d 358, 361.)

The trial court's duty of clarification is well-supported in case law. In *People v. Brouder*, the court stated as follows:

"When a jury manifests confusion or doubt, it is the trial court's duty to reinstruct on any question of law giving rise to that doubt or confusion. [Citations.] 'This is true even though the jury was initially given proper instructions.' " *People v. Brouder* (1988), 168 Ill. App. 3d 938, 947, quoting *People v. Morris* (1980), 81 Ill. App. 3d 288, 290-91.

Considering these legal principles, we now examine the facts relating to this issue. The question submitted by the jury arose from Illinois Pattern Jury Instructions, Criminal, No. 7.02A (2d ed. Supp. 1987), which reads as follows:

"To sustain the charge of first degree murder, the State must prove the following propositions:

*First*: That the defendant, or one for whose conduct he is legally responsible, performed the acts which caused the death of Linda Sanborn; and

*Second*: That when the defendant, or one for whose conduct he is legally responsible, did so,

he intended to kill or do great bodily harm to Linda Sanborn; or he knew that his acts would cause death to Linda Sanborn;

or

he knew that his acts created a strong probability of death or great bodily harm to Linda Sanborn;

or

he was committing the offense of residential burglary.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

A note sent to the judge during deliberations read:

> "To sustain the charge of first degree murder, the State must prove the following proposition: (He was committing the offense of residential burglary) Does the sentence in parenthesis prove that the defendant is guilty of first degree murder standing by itself since a death was involved."

The judge responded, "*YES!*" despite defense counsel's objection.

Defendant cites *People v. Prather* (1985), 138 Ill. App. 3d 32, which held that an erroneous instruction cannot be cured by following it with a correct instruction. This is because it will be left unclear as to which instruction was relied upon by the jury. However, in our case, there was no question that the jury received proper instructions.

Another case cited by defendant is *People v. Kelley* (1983), 113 Ill. App. 3d 761, where the trial judge in the instant case made a remark during *voir dire* concerning that defendant's guilt. In the instant case, the trial judge was responding to a question of law put forth by the jury during deliberations. *People v. Kelley* is also not applicable to the instant case.

A recent case resembling the case at bar is *People v. Willis* (1991), 217 Ill. App. 3d 909. As in our case, defendant Willis argued that the trial court erred in responding to the questions which the jury sent during its deliberations. The court responded as follows:

> "It is imperative that a jury instruction not be confusing to the jury. If the correct principles of law have not been understood by the jury, it will be precluded from reaching a well-reasoned conclusion based on the law and evidence." (*People v. Willis*, 217 Ill. App. 3d at 921.)

Here, as in *Willis*, the question itself indicated that the jurors had read the instruction and were simply confused as to one of the elements. In responding to their question, the court was merely performing its duty to assist the jury in understanding the law so they could reach a well-reasoned verdict.

Defendant's other contention is that the judge's affirmative underlined response allowed the jury to find defendant guilty without the State having to prove all of the elements of first degree murder. In *People v. Willis* (1991), 217 Ill. App. 3d 909, the appellate court found that the trial court did not err by merely returning the original instructions to the jury, with the judge having underlined the excerpt that answered their inquiry. The answer to the question in the instant

case was also contained within the instructions. Further, the jurors quoted a portion of the instruction in their question. Thus, the judge's affirmative response was an absolute clarification of a jury instruction and in no way prejudicial to defendant. We therefore find that the trial judge properly responded to the jury's question of law.

For all of the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.