THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEON-ARD LINDSAY, Defendant-Appellant.

First District (1st Division)   No. 1—91—3110

Opinion filed May 2, 1994.—Rehearing denied June 10, 1994.

Barbara Kamm, of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William Toffenetti, and Daniel Rabinovitz, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

Defendant Leonard Lindsey was charged by information with

armed robbery (720 ILCS 5/18—2 (West 1992)). Following a bench trial, he was convicted and sentenced to 11 years in prison. Defendant argues on appeal that: (1) his conviction for armed robbery must be reduced to robbery or reversed for a new trial where the State failed to prove the weapon used was a dangerous weapon; (2) he was denied effective assistance of counsel where trial counsel conceded defendant's guilt to robbery; (3) the trial court abused its discretion in sentencing him by considering improper factors in aggravation and failing to consider factors in mitigation. The following evidence was produced at trial.

Chris Bour testified for the State that on April 3, 1991, he was employed as the manager at Arby's restaurant in Dolton, Illinois. About 12 midnight he and six other employees were cleaning the store when two men entered the restaurant through the back door. Bour stated that one of the men grabbed an employee while the other person grabbed Bour. Bour stated specifically that it was an ex-employee named Paul Williams who grabbed a woman named Denise. He testified that Williams was known to him because the two had worked together and he recognized Williams' voice, hair and jacket, which he frequently wore to work. Bour testified that Williams placed a weapon against Denise's side and said, "Don't move or I'll kill you." Bour identified the weapon placed at Denise's side, which was a metal pipe.

Bour testified that defendant took him by the neck to the back office and demanded that Bour show him where the money was. Bour testified that when defendant grabbed him by the neck, he turned around and was able to see defendant's face. Bour testified that defendant removed money from the cabinet and that defendant, along with his accomplice, fled through the back door. Bour told the police who arrived at the scene the name of the ex-employee. He also told the officers that when defendant grabbed him by the neck defendant stated, "Don't move, or I will kill you." Bour identified defendant in a lineup as the perpetrator.

On cross-examination when Bour was questioned by defense counsel, he testified that he did not tell the police that one of the men had a length of pipe and acted as if it were a gun.

Marney Zook also testified for the State. Zook testified that shortly after midnight on April 3, 1991, she was working at Arby's in Dolton cleaning the restaurant. Someone said "Tell that bitch to come in the back." Zook testified that she then went to the back of the restaurant and observed defendant holding the back of Bour's shirt and Paul Williams sitting next to an employee named Denise, holding something at her side. Zook testified that Paul Williams had

on a mask and that defendant did not have anything covering his face. She recognized Paul Williams because of his hair and the jacket, which Paul often wore to work. Zook stated that she observed defendant in the back office with Bour. Defendant sat next to Denise holding the object at her side, while Williams stuffed money into his pockets and a deposit bag. Zook stated that as the two men left, defendant stated "Don't anybody move or we'll shoot." Williams then said, "Yeah, don't move, or I am going to shoot." Zook stated that about five minutes after both men left the police arrived. The following day, Zook identified both defendant and Williams in separate lineups.

On cross-examination when Zook was questioned by defense counsel, she testified that she did not tell police that defendant had a pipe in his hand, acting as if it were a gun.

Maria Obajtek also testified for the State. Obajtek testified that about 12 midnight on April 3, 1991, she was also working at Arby's when two men entered the restaurant. One of the men grabbed Chris Bour and pushed him into the office. Obajtek stated that Williams had an object in his hand which he placed against Denise's side. She testified that at the same time, defendant was in the office with Bour taking money. Obajtek stated that she heard the men say "If anyone moves I'll shoot," as the men left the building. The following day Obajtek identified defendant and Williams in a lineup.

On cross-examination, Obajtek also testified that she did not tell the police that one of the men had a pipe in his hand, acting as if it were a gun.

Officer Blaundin testified for the State that on April 3, 1991, about 12:30 a.m. he was on duty and responded to a call of a robbery at Arby's. When he arrived at the scene he was given a description of the offenders as male blacks, one 5 feet 4 inches, and the second offender as 5 feet 7 inches. The first offender was wearing a brown leather jacket and black pants, while the second offender was wearing blue jeans and a blue jacket. Blaundin testified that he was told that one offender was Paul Williams, an ex-employee. He then went to the Williams home.

Blaundin testified that when he arrived at 14722 Woodlawn, he spoke with the parents of Paul Williams. Williams was there and was taken into the station by Officer Blaundin. Officer Blaundin testified that before taking Williams into the station, he heard a noise in Williams' bedroom. Blaundin informed his supervisor of this movement and, based on the conversation with him, he returned to the Williams residence and waited for assisting officers to arrive. Williams' parents signed a consent to search form, and the officers

searched the bedroom. Officer Blaundin stated that he found defendant lying under a pile of clothing in Williams' bedroom. Blaundin found clothing in Williams' bedroom that matched the description of the clothing he had been given. He also found a pair of gym shoes containing money rolled up inside the shoes. Defendant was arrested and taken to the police station.

Officer Frego also testified for the State. He stated that on April 3, 1991, he was assigned to investigate a robbery at Arby's in Dolton. He conducted several lineups in which defendant was a participant. Defendant was identified by several viewers as the perpetrator of the offense. Frego stated that after the completion of the lineups, he went to 149th Street and Woodlawn with Williams. At that location, Williams directed Frego to the pipe and garbage bag which were used in the robbery. About 3:30 p.m., Assistant State's Attorney Ronkowski and Detective Lindsey spoke with defendant and defendant admitted his involvement in the offense. Defendant gave a written statement in which he admitted that he and Williams robbed Arby's to get money for cocaine. Lindsey stated that he took a pipe wrapped inside a plastic bag with him to give the impression that he had a gun. Defendant admitted in his statement that while inside the restaurant he took money and placed it in a blue bag and in his pockets. Defendant also admitted that the money found in his gym shoes was the proceeds from the robbery.

At the close of the State's case in chief, defendant made a motion for a directed finding. Defense counsel stated the following:

"We won't quarrel about the fact that in the light most favorable to them they have shown an armed robbery, but we don't think they have shown an armed robbery, we think, through the testimony of the witnesses, and we ask you to at least direct out the armed robbery."

The prosecutor responded by indicating that the evidence showed the victims believed the weapon was a gun. The robbers held the object out to be a gun and stated that they would shoot if anyone moved. Therefore, the State argued that the evidence was sufficient to sustain the charge of armed robbery. The court denied the motion for a directed finding without comment.

Defendant testified at trial that the object used during the robbery was a conduit through which electrical wires are run. He stated that he wrapped a plastic garbage bag around the conduit during the robbery to give it the appearance of a gun. Defendant admitted giving a written statement and stated that the portion of the statement in which he said Williams was not involved in the robbery was untrue.

On cross-examination, the State questioned defendant about specific aspects of the robbery. Defendant stated that he knew Williams had the pipe in his hand when they entered the restaurant. Defendant testified that he took Bour by the back of his shirt into the back office. Defendant stated that he then stuffed his own pockets with money and also placed money in a blue bag. Defendant stated that he told the police that he and his accomplice had a pipe inside a bag when they entered the restaurant, and that he told the employees, "Bring [your] ass back here. All you get back here or I will shoot." After taking the money, defendant and Williams went to Williams' home. Defendant stated that the money from the robbery was placed inside his gym shoes. On redirect examination, defendant testified that the pipe used was nine inches long and rigid and was meant to look like a weapon.

Following closing argument, defendant was convicted of armed robbery. Defense counsel asserted that there was no need to file a post-trial motion for a new trial because the only issue for appeal was reasonable doubt. At the sentencing hearing, the State introduced a certified copy of defendant's conviction for involuntary manslaughter in 1973 for which he was released from prison in 1977.

Defendant first argues that his conviction for armed robbery must be reduced to robbery or his cause reversed and remanded for a new trial. Specifically, defendant contends that the State did not establish that the weapon used was a dangerous weapon and that the trial court failed to make a specific finding that the weapon used was a dangerous weapon. Defendant maintains that the State erroneously argued that whether a weapon is dangerous is determined by the subjective fear that the robber instilled in the victim.

The State contends that defendant's argument is without merit. The State asserts that the only relevant question is whether any rational trier of fact could have found defendant guilty of armed robbery. The State maintains that the trier of fact heard the evidence and observed the pipe used by defendant and found him guilty. The State contends that the pipe used was heavy enough to cause serious injury if used as a bludgeon and could possibly inflict serious bodily harm if bent and twisted. For the following reasons, we affirm.

A person commits armed robbery when he or she violates section 18—1 of the Criminal Code of 1961 (720 ILCS 5/18—1 (West 1992)), while he or she carries on or about his or her person or is otherwise armed with a dangerous weapon. (720 ILCS 5/18—2(a) (West 1992).) The purpose of the armed robbery statute is to treat more severely a person who commits a robbery while possessing a weapon actually capable of causing serious injury than a person who commits a

robbery without possessing such a weapon. *People v. Skelton* (1980), 83 Ill. 2d 58, 414 N.E.2d 455.

In defining the term "dangerous weapon" for purposes of the armed robbery statute, courts have divided objects into four categories. (*People v. Burge* (1993), 254 Ill. App. 3d 85, 90, 626 N.E.2d 343.) The first category contains objects which are dangerous *per se,* such as knives and loaded guns. (*People v. Neither* (1988), 166 Ill. App. 3d 896, 520 N.E.2d 1247.) The second category contains objects which are never dangerous weapons. (*People v. Skelton* (1980), 83 Ill. 2d 58 (four-inch plastic toy gun as a matter of law not considered dangerous weapon).) The third category contains objects which are not necessarily dangerous weapons but can be used as such. (*People v. Flores* (1993), 245 Ill. App. 3d 149 (unloaded guns or toy guns made of heavy material fall into this category since they are incapable of shooting bullets but can be used as bludgeons).) Whether an object in the third category is a dangerous weapon is a question of fact to be resolved by the trier of fact. (*People v. Garcia* (1992), 229 Ill. App. 3d 436, 438, 593 N.E.2d 1093.) The fourth category contains objects which could normally fall into the third category, but which were actually used in a dangerous manner in the course of the robbery. (See, *e.g., People v. De La Fuente* (1981), 92 Ill. App. 3d 525 (defendants bludgeoned victim with unloaded gun).) With these principles in mind, we examine the weapon used by defendant in the instant case.

The record reveals that the weapon used was a metal conduit, approximately nine inches in length. The weapon does not fire bullets or pellets and is not a knife or gun. Thus, it cannot be considered a dangerous weapon *per se.* (See, *e.g, People v. Skelton*, 83 Ill. 2d at 68.) The weapon here was not used in a dangerous manner during the course of the robbery; thus, it did not fall into the fourth category. Further, we cannot say, as a matter of law, that the weapon is not dangerous; hence, it does not fall into the second category. Therefore, whether the weapon is in fact a dangerous weapon is a question of fact. However, the trial court did not specifically find that weapon was dangerous. Therefore, we must review defendant's conviction in light of the absence of such a finding.

The evidence reveals that the weapon is a nine-inch metal pipe with a jagged edge, wrapped in a black plastic bag. At the time of the robbery codefendant Williams placed the pipe against Denise's side and said "Don't move or I'll kill you." Denise was not bludgeoned with the weapon or in any way injured by the weapon. Further, there was no testimony that defendant used the pipe in a dangerous manner. Defendant maintains that in the absence of a specific finding by the trial court that the weapon was dangerous, and in light of the

State's erroneous argument as to the subjective beliefs of the victims, the court erred in finding him guilty of armed robbery. We disagree.

Defendant's argument is flawed by the fact that there is no requirement in the armed robbery statute that the trial court make a specific finding that an object used during the robbery is a dangerous weapon. Additionally, based on our review of the case law, the failure of the trial court to state specifically that it finds the weapon used in an armed robbery a dangerous weapon has not been determined reversible error or grounds to reduce a defendant's conviction. (See, *e.g.*, *People v. Ratliff* (1974), 22 Ill. App. 3d 106, 317 N.E.2d 63.) To be certain, the court is presumed to know the law and to have applied it correctly in the case before it. (See, *e.g.*, *People v. Buchanan* (1991), 211 Ill. App. 3d 305, 322, 570 N.E.2d 344.) Further, there is no requirement that actual injury or harm must be inflicted upon a victim before an instrumentality can be classified as a dangerous weapon. (*People v. Ratliff* (1974), 22 Ill. App. 3d 106, 317 N.E.2d 63.) Moreover, for purposes of armed robbery, objects which are not dangerous *per se*, but which are capable of inflicting serious injury, have been found dangerous.

In *People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164, the court held that a fingernail clipper that contained a sharp, pointed fingernail file was a dangerous weapon where it was disclosed to the victim during the commission of a sexual assault and robbery. In that case, the victim testified that as she approached her vehicle the defendant shoved her up against the vehicle, pressed an object against her throat and threatened to kill her if she said anything. He sexually assaulted the victim and afterwards took $20 from the victim's purse. The court stated that where a weapon had been originally disclosed to the victim and there was no evidence that the weapon had been discarded, there was sufficient evidence to sustain defendant's conviction for armed robbery. *Robinson* 73 Ill. 2d at 202.

In *People v. Hill* (1977), 47 Ill. App. 3d 976, 362 N.E.2d 470, a case factually similar to the instant case, defendant and his accomplices entered a store at closing time wearing nylons over their heads and carrying a gun. Defendant ordered one employee to move into the back of the store, and his accomplice entered the building. Defendant approached the victims and pointed a gun at the head of one victim, threatening to blow her head off if she moved. His accomplice then took money from a safe and placed it into a bag. Although the evidence revealed that the weapon used during the commission of the crime was an air pistol, the court held that the pistol was a piece of metal and could be utilized in a manner dangerous to the physical well being of the individual threatened. (*Hill*, 47 Ill. App. 3d at 978.)

The appellate court, in citing *People v. Ratliff* (1974), 22 Ill. App. 3d 106, 317 N.E.2d 63, stated that it was not a prerequisite that actual injury or harm must be inflicted upon a victim before an instrumentality can be classified as a dangerous weapon. That the instrumentality used to threaten a victim of a robbery is capable of being used in a manner to cause harm or injury thereby compels a finding that the instrumentality is a dangerous weapon. *Hill*, 47 Ill. App. 3d at 978.

More recently, in *People v. Flores* (1993), 245 Ill. App. 3d 149, 613 N.E.2d 1371, the appellate court held that a baseball bat can be a dangerous weapon. In that case defendant entered a car wash at closing time armed with a baseball bat. He instructed the manager to remove money from the safe while one accomplice stood watch. Defendant threatened the manager that there was someone outside the car wash with a shotgun as he left with the money from the robbery. The appellate court held that there was overwhelming evidence of defendant's guilt of armed robbery, even though the bat was not used to inflict serious injury to the victim.

In each of the above cases, the dangerous object was displayed to the victims with the intent of instilling the fear of a robbery. Although the objects were not *per se* dangerous, they could have been used to cause serious bodily damage to the victims. That fact was sufficient for the courts to conclude that each object was a dangerous weapon.

■ In the instant case, this court has had the opportunity to examine the weapon used in the robbery and finds that it is a nine-inch metal object with a jagged edge. As the court in *Robinson* found that a sharp pointed fingernail clipper could be used in a dangerous manner, we find that the jagged-edge metal pipe used in the instant case could likewise be used in a dangerous manner. Because of the metal nature of the pipe, it conceivably could be used as a bludgeon. Thus, we find that the instrumentality used to threaten the victim can be classified as a dangerous weapon.

While defendant would have this court reduce his conviction to robbery in the absence of a specific finding by the trial court that the weapon was dangerous, we find that the court's silence simply implied that it had no comments. Further, there is no evidence of record that the trial court accepted the State's subjective theory of the case as it related to the impressions of the victims. Moreover, while it would be helpful to the reviewing court if the trial court had made specific findings, in the instant case, the court's finding of guilty implicitly implies that it found the weapon to be dangerous. Based upon these factors, we cannot say that defendant's conviction should be reduced to robbery.

Defendant next argues that he was denied effective assistance of counsel. Specifically, he maintains that trial counsel failed to provide meaningful adversarial testing by pursuing a defense which trial counsel erroneously believed would reduce the offense from armed robbery to robbery. Defendant contends that because of his plea of not guilty, defense counsel was obligated to act as a true advocate for him and subject the State's case to meaningful adversarial testing. (*People v. Hattery* (1985), 109 Ill. 2d 449, 461, 488 N.E.2d 513.) Defendant maintains that he did not consent to defense counsel's strategy and that counsel's argument relating to the weapon was therefore erroneous. Defendant asserts that trial counsel erred by having him acknowledge the confession made.

The State maintains that defendant received a fair trial. The State asserts that defense counsel did all that he could in light of the evidence against defendant.

The relevant standard for determining the performance of counsel is found in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. To prevail on an ineffective-assistance claim, a defendant must establish that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth amendment. (*People v. Strickland* (1992), 154 Ill. 2d 489, 510, 609 N.E.2d 1366.) The defendant must also establish that he was prejudiced as a result of counsel's deficient performance. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. (*Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) If the conclusion is reached that the defendant did not suffer prejudice as a consequence of counsel's actions, then there is no need to determine separately whether counsel's performance was in fact deficient. *People v. Strickland*, 154 Ill. 2d at 510.

The exact argument raised by defendant in the instant case was raised in *People v. Flores* (1993), 245 Ill. App. 3d 149, 155, 613 N.E.2d 1371. In that case, defense counsel argued that defendant could not be prosecuted for armed robbery because the baseball bat used in the robbery was not a dangerous weapon. The bat was made of aluminum, and defendant never threatened anyone with it. Defendant was convicted of armed robbery and argued on appeal that he was denied effective assistance of counsel. Defendant contended that because defense counsel conceded defendant's guilt, the State's case was not subjected to meaningful adversarial testing. The appellate court held that defense counsel's actions amounted to trial strategy, which generally does not amount to ineffective assistance. (*Flores*, 245 Ill. App.

3d at 159.) Similarly, in *People v. Gill* (1988), 169 Ill. App. 3d 1049, 523 N.E.2d 1239, the appellate court found that counsel's strategy of conceding guilt of robbery in an attempt to avoid the greater sentence for an armed robbery conviction amounted to trial strategy.

While defendant is correct that a defense attorney's concession of his client's guilt can fall into the extreme class of ineffective assistance of counsel where prejudice will be presumed (*People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513), prejudice is only presumed where defense counsel has clearly, unequivocally, and without defendant's consent conceded every significant aspect of defendant's guilt. See, *e.g., People v. Campos* (1992), 227 Ill. App. 3d 434, 447, 592 N.E.2d 85.

Our supreme court has held that defense counsel does not always harm his client by conceding his client's guilt. (*People v. Johnson* (1989), 128 Ill. 2d 253, 269, 538 N.E.2d 1118.) In *Johnson*, defense counsel conceded that defendant was guilty of murder but did not concede other charges facing defendant. Because the evidence was overwhelming that defendant committed the murder, and because defense counsel provided defendant with a defense to some of the State's charges, the court concluded that *Hattery* did not apply. The court stated:

> "In situations where there is overwhelming evidence of guilt and no defense, if counsel contests all charges he is liable to lose credibility with the trier of fact when it comes to charges where a legitimate defense exists." *Johnson*, 128 Ill. 2d at 270.

■ In the instant case, although defense counsel conceded defendant's guilt on the theory of robbery, he did aggressively subject the State's case to meaningful adversarial testing as to the crime for which defendant was charged. Defendant was charged with armed robbery, and defense counsel's strategy was to place before the trier of fact evidence that the weapon used was not a dangerous weapon. Throughout the trial, counsel engaged in meaningful testing of the State's case. Defense counsel questioned Chris Bour, who testified that he thought the weapon was a gun but never saw the weapon since it was wrapped in a plastic black bag. This highlighted the subjective impression of the victim as it related to the weapon. State witness Zook was questioned as to whether she told police officers that defendant had a length of pipe in his hand and acted as if it were a gun, to which she replied no. This questioning went to Zook's credibility as it related to reporting the event. Most significantly, defense counsel pointed out to the court that the weapon used was faked as a gun and never used as a bludgeon. The State's argument was that the victims believed the weapon was a gun and that they

would be shot if they did not turn over the money. For purposes of armed robbery, however, the subjective impressions of a victim are an insufficient basis for proving that a dangerous weapon was used. (*People v. Meadows* (1981), 92 Ill. App. 3d 1028, 1030, 416 N.E.2d 404.) Based on these facts, we cannot say that defense counsel failed to subject the State's case to meaningful adversarial testing. Although defense counsel conceded defendant's guilt to robbery, we cannot say that defendant was prejudiced by his counsel's action. Therefore, we need not address whether counsel's actions were deficient. *People v. Strickland*, 154 Ill. 2d at 510.

Defendant also argues that the trial court abused its discretion by failing to properly consider and balance factors in aggravation and mitigation. Defendant maintains that based upon the court's comments during sentencing, the court considered his drug addiction, lack of remorse and lack of rehabilitative potential as factors in aggravation. Defendant contends that drug addiction is considered a mitigating factor and that the record is devoid of evidence proving that he lacked rehabilitative potential and remorse.

■ A trial court's sentencing decision is entitled to great deference. (*People v. Streit* (1991), 142 Ill. 2d 13, 566 N.E.2d 1351.) The standard for reviewing a claim of excessive sentence is whether the trial court abused its discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) Here, defendant was found guilty of armed robbery, a Class X felony, for which defendant could have been sentenced to 30 years in prison. (730 ILCS 5/5—8—1 (West 1993).) Defendant maintains that the court considered improper factors and failed to consider proper factors in sentencing him. However, there is a rebuttable presumption that the sentence imposed was proper, which is only overcome by an affirmative showing that the sentence imposed varies greatly from the purpose and spirit of the law or is manifestly violative of constitutional guidelines. (*People v. Jenkins* (1984), 128 Ill. App. 3d 853, 857, 471 N.E.2d 647.) Here, defendant was sentenced to an 11-year sentence in prison, clearly within the statutory range. The trial court is in the better position to impose sentence, and we will not disturb defendant's sentence.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P.J., and O'CONNOR, J., concur.