THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL ABT, Defendant-Appellant.

First District (4th Division)   No. 1—92—2423

Opinion filed February 9, 1995.

Martin J. Carlson, of State Appellate Defender's Office, and Teri Lee Ferro, of Winston & Strawn, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William John Healy, and Robert Robertson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Following a jury trial, the defendant, Michael Abt, was found guilty of possession of cocaine with intent to deliver (Ill. Rev. Stat. 1989, ch. 56$\frac{1}{2}$, par. 1401(a)(2)) and possession of cannabis (Ill. Rev. Stat. 1989, ch. 56$\frac{1}{2}$, par. 705(d)), and sentenced to concurrent prison terms of six years and one year, respectively. The defendant raises

two issues on appeal: (1) whether the trial court erroneously denied his motion to quash his arrest and suppress evidence, and (2) whether he was denied effective assistance of counsel. We conclude that the warrantless arrest did not violate the defendant's fourth amendment right because exigent circumstances were present. We also conclude that the defendant failed to meet his initial burden of showing an unlawful search and seizure; therefore, the trial court properly denied his motion to suppress. Finally, we find that the defendant was not deprived of his sixth amendment right to effective assistance of counsel. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Michael Abt was charged by information with one count of possession of more than 15 grams but less than 100 grams of cocaine with intent to deliver and one count of possession of more than 30 grams but less than 500 grams of cannabis with intent to deliver. Prior to trial, the defendant moved to quash his arrest and suppress the evidence seized by the arresting officers. The defendant argued that his arrest was illegal because the officers failed to obtain a warrant prior to entering his home without consent and that exigent circumstances were absent.

At the hearing on the motion, the defendant testified to the following sequence of events. At approximately 1 a.m. on April 14, 1989, his friend Alan Schmidt knocked on the back door of his home. Schmidt had visited Abt's home a few minutes prior to this, but Abt had not given him anything. When Abt opened the door, two police officers entered his home. Prior to the officers' entry, neither the defendant nor anyone else spoke. Then, one officer raced down the flight of stairs into Abt's basement, while the other held him against the wall with a gun to his throat. The officer then brought him into the basement. The defendant also stated that he did not consent to the officers' entry.

Next, Officer Richard Anderson testified that on April 14, 1989, he was conducting a surveillance of Abt's home with two other officers, Peter Bukiri and Thomas Wiggins, as part of a narcotics investigation. He stated that the police had been observing the defendant's residence for about four days prior to his arrest. Anderson testified that during the four days, he witnessed people pulling up in cars, walking to the rear of the defendant's home, returning a short time later and then driving away. On cross-examination, Anderson admitted that at the preliminary hearing he testified that he only saw two people approach the defendant's door during the four days of surveillance.

Anderson further testified that on the night of April 13, 1989, he saw Schmidt knock on the defendant's back door. He stated that he heard Schmidt ask the defendant for a "16th" and saw Schmidt hand over money to the defendant. Schmidt then entered the house and reemerged a short time later. The officer stated that he observed Schmidt and the defendant from a position that was approximately 25 to 30 feet from the defendant's back door. Anderson indicated that he was unable to determine whether a controlled substance exchanged hands, but believed that a drug transaction was in progress.

Anderson recalled that as Schmidt walked toward the front of the house, the officers approached him and identified themselves as police officers. Schmidt then "broke down and began crying" and handed the officers two colored packets containing white powder. After they placed Schmidt under arrest, he agreed to return to the defendant's home to participate in a controlled buy by attempting to purchase narcotics from the defendant in the officers' presence.

Schmidt promptly returned to the defendant's back door, with Anderson and Bukiri positioned against the wall of the house on either side of the door. When the defendant answered the door, Schmidt asked for either a "16th" or "dope." Anderson further testified that the defendant indicated that if Schmidt had the money, he could come in. As Abt began walking down the stairs to the basement, the officers followed. Anderson identified himself as a police officer and arrested Abt at the bottom of the stairs.

At the end of the suppression hearing, the trial court found that the defendant was not aware of the officers' presence during the controlled buy and that the officers merely followed Schmidt into the defendant's home. The court also noted that the defendant did not invite the officers in or consent to their entry. Nonetheless, the court found that the officers entered the home peacefully because the defendant opened the door to Schmidt. The court finally concluded that given the evidence presented, there were exigent circumstances which paralleled the situation in *People v. Eichelberger* (1982), 91 Ill. 2d 359, 438 N.E.2d 140. Therefore, it denied the defendant's motion.

At trial, Officer Richard Anderson again testified. His description of the investigation and events leading up to the arrest was substantially similar to that given at the hearing on the motion to quash and suppress. He could not specifically recall whether there was another individual in the basement at the time of the arrest. He further testified that he and the other officers confiscated various pieces of evidence from the defendant's basement which included the following: plastic bags containing cannabis, a clear plastic bag containing cocaine, a triple-beam scale, a smoking pipe, a spoon with

burnt residue, an oil can, $1,556, a container of pills and three pieces of the defendant's identification. Anderson testified that he could see all of the above-listed items from where he stood in the basement following the defendant's arrest.

Officer Peter Bukiri also testified at trial on behalf of the State. His testimony was essentially the same as that of Anderson, except that Bukiri believed that he, Anderson, and Wiggins were in the basement at the time of the defendant's arrest. Also, Bukiri stated that after the defendant received his *Miranda* warnings, he told the officers that he was selling narcotics to offset the cost of his habit.

Valarie O'Bryan testified as part of the case in chief for the defense. O'Bryan, the mother of the defendant's two sons, testified that she visited Abt shortly before midnight on April 13, 1989. She explained that she entered Abt's home through the back door and that Bobby Hackett, an individual with arm and leg braces, was in the basement with the defendant. She recalled that Schmidt arrived after she did. She also testified that the defendant was "very high" that night and that he had a severe cocaine habit.

Michael Abt testified in his own defense that he was smoking cocaine in his basement with Bobby Hackett on the night of April 13, 1989. He explained that he had been a cocaine addict for about 10 years and that the narcotics confiscated from the home were solely for his personal consumption. He also admitted to using cannabis and barbiturates.

Abt further testified that Schmidt came over on the night of April 13, 1989, to sell him barbiturates, which he purchased. He explained that he did not sell Schmidt any cocaine and that the money which was found by the police was to be used to pay Bobby Hackett for the cocaine.

Officers Bukiri and Anderson testified in rebuttal. Both stated that they did not observe a woman with two children approach the back door of the home on the night of April 13, 1989. They also testified that they did not see anyone fitting Bobby Hackett's description in the basement at the time of the defendant's arrest. The jury subsequently found the defendant guilty of possession of more than 15 grams but less than 100 grams of cocaine with the intent to deliver and possession of more than 30 but less than 500 grams of cannabis. Abt was sentenced to serve six years in prison.

## DISCUSSION

### I. WARRANTLESS ENTRY TO ARREST

On appeal, the defendant challenges the propriety of the trial

court's denial of his motion to quash his arrest and suppress evidence. First, we will examine the arrest aspect of the motion. Specifically, the defendant contends that the trial court erroneously concluded that under *People v. Eichelberger* (1982), 91 Ill. 2d 359, 438 N.E.2d 140, exigent circumstances justified the officers' warrantless, nonconsensual entry into his home to arrest him. The defendant maintains that a *de novo* standard of review is warranted in this case. The question of whether exigent circumstances are present is a question of law when neither the facts nor credibility of witnesses is questioned. (*People v. Foskey* (1990), 136 Ill. 2d 66, 554 N.E.2d 192; *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543.) Thus, we agree with the defendant that a *de novo* standard of review applies here.

The fourth amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." (U.S. Const., amend. IV.) The amendment seeks to balance the interest of citizens in being free from unreasonable interferences with privacy and the interest of fair law enforcement for the community's protection. *People v. James* (1994), 163 Ill. 2d 302, 311, citing *Dunaway v. New York* (1979), 442 U.S. 200, 208, 60 L. Ed. 2d 824, 833, 99 S. Ct. 2248, 2254.

Warrantless searches are *per se* unreasonable unless one of the limited exceptions to the warrant requirement is found to be applicable. (*Payton v. New York* (1980), 445 U.S. 573, 586, 63 L. Ed. 2d 639, 651, 100 S. Ct. 1371, 1380.) However, where exigent circumstances are present, officers need not obtain a warrant in order to execute an arrest. *Payton*, 445 U.S. at 583, 63 L. Ed. 2d at 648, 100 S. Ct. at 1378.

A court should consider several factors when deciding whether exigent circumstances exist. Factors which indicate the reasonableness of a police officer's actions under the circumstances include: (1) the officer acted upon a clear showing of probable cause, (2) the defendant was clearly identified, (3) there was a strong reason to believe that the defendant was on the premises, and (4) the entry was peaceful. (*Eichelberger*, 91 Ill. 2d at 368, 438 N.E.2d at 144; *Abney*, 81 Ill. 2d at 171-72, 407 N.E.2d at 549.) The court may also consider the following: (1) the need for prompt action (including the recentness of the offense), (2) the absence of any deliberate or unjustified delay by the officers during which time a warrant could have been obtained, and (3) the belief that the suspect was violent or armed. *Eichelberger*, 91 Ill. 2d at 367, 438 N.E.2d at 144; *Abney*, 81 Ill. 2d at 169-71, 407 N.E.2d at 547-48.

"All of these factors are guidelines, and not cardinal maxims to be applied rigidly in each case." (*People v. White* (1987), 117 Ill. 2d 194, 217, 512 N.E.2d 677, 685.) Therefore, the presence of all factors in a given situation is not necessary; rather, they must be satisfied on balance. *People v. Cobb* (1983), 97 Ill. 2d 465, 484, 455 N.E.2d 31, 39.

We now turn to an examination of *People v. Eichelberger*. In *Eichelberger*, the police conducted a surveillance of the defendant's hotel room as part of a narcotics investigation. The officers set up a controlled buy in which an informant asked the defendant whether he had any "grams." As the officers stood outside of a partially opened door which led into the defendant's room, the defendant responded that he had narcotics in his possession and was willing to sell to the informant. At that point, the officers entered the room and placed the defendant under arrest. *Eichelberger*, 91 Ill. 2d at 363-64, 438 N.E.2d at 142.

The court in *Eichelberger* first concluded that the defendant had a reasonable expectation of privacy in his hotel room. The court then held:

> "[T]he warrantless entry into defendant's hotel room for the purpose of effecting an arrest did not violate defendant's fourth amendment right since the police officers reasonably believed that a felony was being committed in their presence." *Eichelberger*, 91 Ill. 2d at 370-71, 438 N.E.2d at 145.

We agree with the trial court's conclusion that the circumstances in *Eichelberger* parallel the present case. However, the defendant claims that unlike the situation in *Eichelberger*, the officers in this case had probable cause prior to the controlled buy. The defendant contends that probable cause was established following Schmidt's arrest, and therefore, the officers should have ceased their investigation to obtain a warrant before proceeding with the controlled buy.

Regardless of whether the police had probable cause following Schmidt's arrest, the controlled buy constituted a separate felony in progress in the officers' presence. At the hearing on the motion, Officer Anderson testified that Schmidt asked the defendant for either "dope" or a "16th," and the defendant indicated that if Schmidt had the money he could come in. In Illinois, the possession of narcotics with the intent to deliver is a felony. (See, *e.g.*, Ill. Rev. Stat. 1989, ch. 56½, par. 1401.) Therefore, the officers acted upon a clear showing of probable cause because the defendant was committing a felony in their presence.

The defendant further suggests that the controlled buy was a police-created exigency which does not constitute sufficient justification for the warrantless entry to arrest. The defendant cites *People v.*

*Galdine* (1991), 212 Ill. App. 3d 472, 571 N.E.2d 182, in support of his proposition that the officers should have ceased their investigation following Schmidt's arrest in order to obtain a warrant for the defendant's arrest.

In *Galdine*, the court held that exigent circumstances were not present where police officers set up a controlled buy, but noted that its decision was governed by the circumstances of that case. (*Galdine*, 212 Ill. App. 3d at 483, 571 N.E.2d at 190.) However, *Galdine* presents a vastly different set of circumstances from the situation leading up to the defendant's arrest in the case at bar.

In *Galdine*, prior to the defendant's arrest, the police informant had already purchased cocaine from the defendant twice during the previous month. Additionally, on the day of the planned controlled buy, the price and amount of narcotics to be sold had been predetermined by the defendant and the informant. Also, on the day of the controlled buy, 16 officers from different agencies met regarding the case, and a photojournalist was summoned. The officers then proceeded with the controlled buy and arrest of the defendant without a warrant.

In the present case, the officers proceeded with the controlled buy shortly following Schmidt's arrest, a point which the defendant concedes. Also, the details of the purchase, such as the amount or price, were not prearranged. Prior to Schmidt's arrest, he had not been working in connection with the police. Moreover, the controlled buy in *Galdine* occurred after significant, long-term planning, while all of the events in the present case occurred at virtually the same time. Accordingly, we reject the defendant's argument and conclude that under *People v. Eichelberger* the officers had a right to make a warrantless entry to arrest the defendant because they reasonably believed that a felony was being committed in their presence.

## II. SEIZURE OF EVIDENCE

We also conclude that the court below properly denied the defendant's motion to suppress the evidence seized following the arrest. On a motion to suppress evidence, "the burden of proving that the search and seizure were unlawful shall be on the defendant." (Ill. Rev. Stat. 1989, ch. 38, par. 114—12(b).) This statute requires the defendant to make a *prima facie* showing that there was a search and that it was illegal. *People v. Berg* (1977), 67 Ill. 2d 65, 68, 364 N.E.2d 880, 881.

In this case, the parties dispute the location of the defendant's arrest. The defendant maintains that he was arrested on the landing at the top of the stairs, and the officers contend that the arrest occurred

at the bottom of the stairs. Anderson testified that he could see the evidence in question from the bottom of the stairwell. The trial court found that the testimony of both witnesses (the defendant and Anderson) at the suppression hearing had the "ring of believability." The court subsequently concluded that because the defendant failed to meet his burden on the motion to suppress, the evidence would be admitted.

■ On appeal, the defendant argues that under *People v. Montgomery* (1980), 84 Ill. App. 3d 695, 405 N.E.2d 1275, the State had the burden of proving that the evidence seized was in plain view. However, *Montgomery* is inapposite, as the defendant in that case successfully established the location of his arrest in relation to the evidence seized. In the case at bar, the defendant has failed to meet this initial burden. Therefore, we conclude that the trial court properly denied the defendant's motion to suppress the evidence.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, the defendant argues that he did not receive effective assistance of counsel in violation of the sixth amendment to the Constitution of the United States. The defendant cites two major defects in his defense which he contends rise to the level of constitutional violations: (1) trial counsel conceded that the defendant possessed controlled substances for personal consumption due to an addiction to cocaine, and (2) counsel failed to call certain witnesses at the suppression hearing.

The defendant maintains that trial counsel did not subject the State's case to "meaningful adversarial testing" and, specifically, that counsel "completely conceded" that the defendant possessed controlled substances for his own personal consumption. The defendant argues that given trial counsel's concession, the law presumes incompetence, and references *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513, as support for his argument. The defendant also charges that his addiction to cocaine is not a legal defense to the crimes charged; therefore, trial counsel improperly presented this fact as part of his defense.

Contrary to the defendant's argument, prejudice is only presumed where defense counsel has unequivocally conceded every significant aspect of the defendant's guilt, without the defendant's consent. (*People v. Lindsay* (1994), 263 Ill. App. 3d 523, 635 N.E.2d 551; see also *People v. Johnson* (1989), 128 Ill. 2d 253, 538 N.E.2d 1118.) Because counsel did not concede the defendant's guilt concerning his intent to deliver narcotics, we conclude that the State's case was subjected to meaningful adversarial testing, and the presumption of incompetency does not apply.

Therefore, in order to establish ineffective assistance of counsel, the defendant must show that trial counsel's performance fell below an objective standard of reasonableness. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) Second, the defendant must demonstrate that there is a reasonable probability that but for trial counsel's errors, the result of the trial would have been different. (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) A "reasonable probability" is defined as a probability sufficient to undermine the outcome. (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) Also, trial counsel's tactical decisions are afforded great deference on review. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.

At trial, the defendant testified at length regarding the severity of his addiction and his intent to consume the narcotics in his possession. The ultimate decision of whether to testify at trial is left to the defendant's discretion. (*People v. Brocksmith* (1994), 162 Ill. 2d 224, 642 N.E.2d 1230; *People v. Anderson* (1994), 266 Ill. App. 3d 947, 641 N.E.2d 591.) However, certain matters involving trial strategy are left to the discretion of trial counsel, such as: whether to offer certain evidence, whether to call particular witnesses, which defense theory to present at trial, and whether and how to conduct cross-examination. *Anderson*, 266 Ill. App. 3d at 956-57, 641 N.E.2d at 599.

■ The defendant had a fundamental right to decide to testify on his own behalf (*Anderson*, 266 Ill. App. 3d at 956, 641 N.E.2d at 599), and he does not contend, nor does the record show, that his decision to take the stand was not his own. Consequently, trial counsel had to proceed in light of the defendant's statements at trial. We find that counsel had few strategic alternatives given the fact that the motion to suppress was denied, and the evidence clearly demonstrated the defendant's guilt with respect to the possession aspect of the charge. Therefore, we conclude that defense counsel's strategy did not fall below an objective standard of reasonableness given the overwhelming evidence that the defendant possessed controlled substances. See *People v. Nilsson* (1992), 230 Ill. App. 3d 1051, 595 N.E.2d 1304.

■ Finally, we turn to the defendant's argument that trial counsel should have called Alan Schmidt and Bobby Hackett to testify during the suppression hearing. Notably, the defendant failed to present any evidence that either individual was capable of providing exculpatory testimony. Also, trial counsel is given wide latitude in deciding which witnesses to call at trial. (*People v. Moleterno* (1993), 254 Ill. App. 3d 615, 627 N.E.2d 129.) We are not faced with a situation in which counsel failed altogether to call any witnesses at the suppression

hearing, as the defendant testified on his own behalf. We conclude, therefore, that counsel's decision was strategic and did not constitute ineffective assistance of counsel. For the reasons stated above, and after a thorough examination of the briefs and record in this case, the defendant's conviction and sentence are affirmed.

Affirmed.

HOFFMAN, P.J., and S. O'BRIEN, J., concur.