THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PERRIE GIBSON, Defendant-Appellant.

Fifth District    No. 5—96—0716

Opinion filed November 4, 1997.

Daniel M. Kirwan and Janet Gandy Fowler, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Stephen E. Norris and Rebecca Sanders, both of State's Attorneys Appellate Prosecutor's Office, of Mt. Vernon, for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Perrie Gibson, entered an *Alford* plea in Madison County on January 29, 1996, to attempted first-degree murder based on his participation in the beating of another 15-year-old boy, which led to the victim's reduction to a permanent vegetative state. On April 11, 1996, defendant was sentenced to serve 16 years' imprisonment. His motion for the modification of his sentence was heard and denied on October 7, 1996, and his notice of appeal was filed in this court on October 21, 1996.

On appeal, defendant asserts that it is necessary to reverse his conviction and remand the cause for further proceedings because although it was known that he was taking psychotropic medication approximately a month prior to entering his plea, as well as five weeks after the plea, no hearing was held to determine whether he was fit to plead guilty, in violation of the version of section 104—21(a) of the Code of Criminal Procedure of 1963 which was effective prior to December 13, 1995 (725 ILCS 5/104—21(a) (West 1992)). He takes this position because the version of the statute that was in effect at the time of his conviction and sentence (725 ILCS 5/104—21(a) (West Supp. 1995) (as amended by Pub. Act 89—428, eff. December 13, 1995)) was declared unconstitutional in *Johnson v. Edgar*, 176 Ill. 2d 499, 522, 680 N.E.2d 1372 (1997), as violative of the single-subject rule.

The State contends that the version of the statute enacted in Public Act 89—689, section 90, effective December 31, 1996 (725 ILCS 5/104—21(a) (West 1996)), subsequent to defendant's conviction and sentencing, should be given retroactive application to defendant's case. In the alternative, it argues that a reversal of the conviction should not be automatically granted.

## BACKGROUND

Because of the narrow issue involved on appeal, only the facts directly pertinent to the issue on appeal need be set forth. Defendant, a juvenile who had been certified to stand trial as an adult, was held in the Madison County Detention Center awaiting trial following his August 1, 1995, arrest for attempted first-degree murder. On December 29, 1995, defendant responded to a perceived lack of attention by the staff by punching his fist through the protective glass window in his room. The Anderson Hospital emergency department nursing documentation report contained in the presentence investigation report (PSI) prepared to assist in sentencing listed Sinequan as "home meds" for defendant. Little more than a month later, defendant entered his *Alford* plea on January 29, 1996.

The PSI, dated March 5, 1996, stated, "[Defendant] is taking

Sinequan for anxiety according to detention home workers." Five weeks later, defendant was sentenced to 16 years' imprisonment. His motion for the modification of his sentence was denied.

Neither counsel, nor the State, nor the court, all of whom were aware via the PSI that defendant had taken Sinequan at the crucial period of plea and sentence, broached the subject of the possible need for a fitness hearing pursuant to section 104—21(a).

## DISCUSSION

The Mental Health and Developmental Disabilities Code defines "psychotropic medications" as "medication whose use for antipsychotic, antidepressant, antimanic, antianxiety, behavioral modification or behavioral management purposes is listed in AMA Drug Evaluations, latest edition, or Physician's Desk Reference, latest edition, or which are administered for any of these purposes." 405 ILCS 5/1—121.1 (West Supp. 1995). In *Washington v. Harper*, 494 U.S. 210, 214, 108 L. Ed. 2d 178, 193, 110 S. Ct. 1028, 1032 (1990), the Supreme Court described psychotropic drugs as "medications commonly used in treating mental disorders such as schizophrenia," the effect of which is "to alter the chemical balance in the brain, the desired result being that the medication will assist the patient in organizing his or her thought processes and regaining a rational mind."

The PSI indicates that defendant was using Sinequan. The Physician's Desk Reference lists the drug as a psychotherapeutic agent for the treatment of anxiety and depression. Physician's Desk Reference 2098 (7th ed. 1995). Clearly, Sinequan is the type of medication contemplated by section 104—21(a).

Prior to December 13, 1995, the version of section 104—21(a) that was in effect (725 ILCS 5/104—21(a) (West 1994)) read as follows:

> "(a) A defendant who is receiving psychotropic drugs or other medications under medical direction is entitled to a hearing on the issue of his fitness while under medication." 725 ILCS 5/104—21(a) (West 1994).

This version was found to mandate a new trial, without regard to the actual condition of the defendant at the time of the proceedings, if the defendant ingested psychotropic drugs during the time immediately surrounding the trial and sentencing hearing. See *People v. Brandon*, 162 Ill. 2d 450, 643 N.E.2d 712 (1994); *People v. Gevas*, 166 Ill. 2d 461, 655 N.E.2d 894 (1995); *People v. Birdsall*, 172 Ill. 2d 464, 670 N.E.2d 700 (1996); *People v. Nitz*, 173 Ill. 2d 151, 670 N.E.2d 672 (1996).

On December 13, 1995, Public Act 89—428 became effective. It included the amendment of section 104—21(a). As amended, the section read:

"(a) A defendant who is receiving psychotropic drugs under medical direction is entitled to a hearing on the issue of his or her fitness while under medication; however, no hearing is required unless the court finds there is a bona fide doubt of the defendant's fitness." 725 ILCS 5/104—21(a) (West Supp. 1995).

Defendant's case was pending in the circuit court on the effective date of the amendment, and thus the procedural nature of the statute rendered it applicable to his case. See *People v. Nitz*, 173 Ill. 2d 151, 162-63, 670 N.E.2d 672, 677 (1996). However, on May 23, 1997, in *Johnson v. Edgar*, 176 Ill. 2d 499, 523, 680 N.E.2d 1372 (1997), our supreme court declared Public Act 89—428 unconstitutional and unenforceable as a violation of the one-subject rule.

In Illinois, an unconstitutional statute is void *ab initio*. *People v. Zeisler*, 162 Ill. App. 3d 578, 579, 515 N.E.2d 1297, 1298 (1987), *aff'd*, 125 Ill. 2d 42, 531 N.E.2d 24 (1988), citing *People v. Manuel*, 94 Ill. 2d 242, 244-45, 446 N.E.2d 240, 241 (1983). In *People v. Gersch*, 135 Ill. 2d 384, 553 N.E.2d 281 (1990), our supreme court explained that when amendments to a statute were found void *ab initio*, it is as if the amended statute never existed. See *People v. Pozdoll*, 230 Ill. App. 3d 887, 893, 596 N.E.2d 164, 168 (1992).

Defendant argues that because the amendment effected in Public Act 89—428 was void from its inception, the statute in effect prior to its enactment should be applied to his case. He contends that Public Act 89—689, section 90, effective December 31, 1996, should not be applied retroactively to his case because his plea and sentence preceded the effective date of the statute.

The State urges this court to find that Public Act 89—689, section 90, effective December 31, 1996, should be given retroactive application to defendant's case because it was pending in this court on appeal at the time of the amendment. As of that date, section 104—21(a) was amended to read:

"(a) A defendant who is receiving psychotropic drugs shall not be presumed to be unfit to stand trial solely by virtue of the receipt of those drugs or medications." 725 ILCS 5/104—21(a) (West 1996).

The State cites *Nitz*, 173 Ill. 2d at 162-63, 670 N.E.2d at 676, for its characterization of section 104—21(a) as set forth in Public Act 89—428 as a procedural rule which is amenable to retrospective application. Although it was not necessary to the decision, the court said, "we find it appropriate to note the rule that amendatory acts which are procedural in nature have retrospective operation for matters which are *pending* on the effective date of the amendment or are subsequently filed." (Emphasis in original.) *Nitz*, 173 Ill. 2d at 162, 670 N.E.2d at 677. The *Nitz* court did not give the amendment effec-

tive December 13, 1995, retrospective application to the defendant's case in that instance because the amendment was not in effect at the time of trial or direct appeal, but it became operative only during the defendant's collateral attack on the judgment by way of a postconviction petition. We note that defendant concedes in his brief that *Nitz* stands for the proposition that section 104—21(a) is a procedural statute, amendments to which apply to proceedings pending on the effective date of an amendment.

The State argues that because defendant's appeal here was pending when the amendment set out in Public Act 89—689, section 90, became effective on December 31, 1996, it should be applied retroactively to defendant's case. It urges us to find that no error transpired, despite the fact that defendant was not given a fitness hearing, because of the mere fact of his ingestion of psychotropic medication at or near the time of his plea and the imposition of his sentence.

In the alternative, the State argues that even if we decline to give Public Act 89—689, section 90, retrospective application, even under the version of section 104—21(a) which was in effect prior to December 13, 1995, it is not necessary to automatically reverse defendant's conviction. It cites *People v. Burgess*, 176 Ill. 2d 289, 303, 680 N.E.2d 357, 363 (1997), for its position that automatic reversal is not always appropriate and that "there will be some circumstances in which it can be said that the use of psychotropic medication did not affect the defendant's mental functioning in such a way that relief would be appropriate." *Burgess*, 176 Ill. 2d at 303, 680 N.E.2d at 363. In *Burgess*, the defendant's trial began on March 10, 1995, and the capital sentencing hearing concluded on March 21, 1995, before the effective date of Public Act 89—428, which was later declared unconstitutional. After the defendant submitted his initial appellate brief, the reviewing court granted his motion to stay the normal briefing schedule and remanded the case for a special supplemental hearing to ascertain if he was given psychotropic medication during the critical time period. The March 1996 hearing produced extensive information about not only the defendant's ingestion of psychotropic medication but the effect it had upon him. Because the evidence was so complete, the supreme court found that the record *in toto* compelled the conclusion that the defendant was not impaired as a result of his psychotropic medication during the time of trial and the sentencing hearing, and it declined to reverse his conviction. *Burgess*, 176 Ill. 2d at 304, 680 N.E.2d at 364.

Because of the grounds for the supreme court's decision, it found that it did not need to consider the State's argument that the

"recently amended version of the psychotropic drug statute, section 104—21(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/104—21(a) (West Supp. 1995)) controls the present appeal and that the defendant is not entitled to any relief under the new provision." *Burgess*, 176 Ill. 2d at 305-06, 680 N.E.2d at 364. It also noted that in *Birdsall* the court's footnote summarily stated that the amended statute was not applicable to that case. See *Birdsall*, 172 Ill. 2d at 475 n.1, 670 N.E.2d at 706 n.1.

In the case at bar, defendant's case was pending on direct appeal on December 31, 1996, and thus, we believe that the *Nitz* decision supports our conclusion that Public Act 89—689, section 90, should apply retroactively to this cause. However, that conclusion does not mean that this court is required to disregard the fact that defendant was ingesting psychotropic medication during the crucial period of time in which he entered an *Alford* plea and was sentenced. The amendment merely removes a presumption of unfitness related to medication with mind-altering prescription drugs that was formerly in place.

The record is replete with reports written by psychologists and counselors about defendant's mental and emotional states, as well as the various medications that were administered to him from the time he was eight years old through the date of sentencing, when he was 16. During the critical period of time in issue, he was in the custody of the Madison County Detention Home, which presumably would have records of any medications administered to him still extant. Given the relatively short period of time since defendant was sentenced on April 11, 1996, we believe that it is feasible to remand this case to the circuit court of Madison County for a hearing to explore the quantity of medication administered to defendant and the impact of the Sinequan on his mental functioning. Should the court determine that defendant's medication compromised his ability to plead and be sentenced, it can vacate his *Alford* plea and sentence and allow him to plead anew. Should the court find that his mental status was not rendered doubtful due to the medication, it can allow defendant's conviction and sentence to stand.

Remanded with directions.

WELCH and MAAG, JJ., concur.