May 4, 1998

NO. 4-97-0079

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee,           ) Circuit Court of

          v.                            ) Sangamon County

DEE M. SMITH,                           ) No. 95CF819

          Defendant-Appellant.          )

                                    ) Honorable

                                    ) Sue E. Myerscough,

                                    ) Judge Presiding.

_________________________________________________________________

JUSTICE McCULLOUGH delivered the opinion of the court:

Following a jury trial in the circuit court of Sangamon County, defendant Dee M. Smith was found guilty of aggravated battery.  720 ILCS 5/12-4(b)(8) (West 1994).  She was sentenced to 24 months' probation.  The issues are whether (1) defendant was denied effective assistance of counsel and due process because the defense trial counsel failed to request and the trial court failed to order a fitness hearing even though de­fendant was receiving prescribed psycho­tropic medication at the time of trial and sentencing and (2) the trial court committed an abuse of discre­tion by answering "no" to the jury's question of whether the jury had "the option of downgrading to a charge of battery," even if it had found the elements of aggravated battery had been proved.  Only the facts relevant to the issues will be discussed.

The defendant's presentence investigation report contained information from medical doctors, a clinical psycholo­gist, and defendant concerning the use of Effexor and Xanax, and treatment for symptoms of depression and anxiety.  The State does not dispute that defendant may have received multiple prescriptions of Xanax and Effexor prior to, around the time of, and subsequent to her trial and sentencing hearings.  Also undisputed is that the fitness hearing was not asked for by defendant's trial counsel or provided to defendant prior to trial or sentenc­ing and that Xanax and Effexor are psycho­trop­ic medica­tions.

The State argues that the amended version of section 104-21 of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-21 (West 1996)) applies to this case so that reversal is not automati­cally required.  This court has considered the same argument in 
People v. Straub
, 292 Ill. App. 3d 193, 197-99, 685 N.E.2d 429, 432-33 (1997), and rejected it.  We deem 
Straub
 control­ling and decline to revisit the issue.  See also 
People v. Cortes
, 181 Ill. 2d 249, 275, ___ N.E.2d ___, ___ (1998).

This case differs somewhat from 
Straub
 in that the amendment to section 104-21 effective December 31, 1996 (Pub. Act 89-689, §90, eff. December 31, 1996 (1996 Ill. Laws 3775, 3792)), was effective at the time of defendant's sentenc­ing.  It was not in effect, however, when she was tried.  In addition, the 
Straub
 court did not find ineffective assis­tance of counsel or an abuse of discretion in failing to conduct a fitness hearing because (1) there was no evidence defendant was taking the prescribed medica­tion, (2) two evaluations found defendant fit to stand trial, (3) the trial court was fully aware of defendant's physical and mental problems and medication and took great pains to assure that defendant's medication did not affect his ability to understand the proceedings and to cooperate in his defense, and (4) defendant's counsel understood the obligation to raise fitness as an issue and the trial court could rely on defense counsel's representation that there was no problem.  
Straub
, 292 Ill. App. 3d at 199-200, 685 N.E.2d at 434.  The record in the case at bar would not support such findings.

In 
People v. Kilpatrick
, 293 Ill. App. 3d 446, 448-49, 688 N.E.2d 1202, 1204 (1997), the court adopted 
Straub
 and rejected the State's cited cases of 
People v. Perry
, 292 Ill. App. 3d 705, 686 N.E.2d 677 (1997), and 
People v. Gibson
, 292 Ill. App. 3d 842, 687 N.E.2d 1076 (1997).  As a result, in 
Kilpatrick
, the cause was remanded for a hearing to determine defendant's fitness to stand trial.  
Kilpatrick
, 293 Ill. App. 3d at 450, 688 N.E.2d at 1205.  As in 
Kilpatrick
, the trial court should determine defendant's fitness to stand trial.

The next issue is whether the trial court committed an abuse of discre­tion by answering "no" to the jury's question of whether it could downgrade to a charge of battery even if it had found the elements of aggravated battery had been proved.

At trial, prior to jury delibera­tions, the trial court's instructions to the jury included the following instructions:

"The defendants are charged with the offense of aggravated battery.  The defendants have pleaded not guilty.  Under the law, a person charged with aggravated battery may be found (1) not guilty; or (2) guilty of aggra­vated battery; or (3) guilty of battery." 

See Illinois Pattern Jury Instructions, Criminal, No. 2.01 (3d ed. 1992) (hereinafter IPI Crimi­nal 3d).  

"A person commits the offense of battery when he knowingly without legal justification and by any means causes bodily harm to another person."  

See IPI Criminal 3d No. 11.05.

"A person commits the offense of aggra­vated battery when she knowingly without legal justification and by any means causes bodily harm to another person, and in doing so, she is on or about a public place of amusement." 

See IPI Criminal 3d No. 11.15.

"To sustain the charge of aggravated battery the State must prove the following proposi­tions:

First proposition:  that the defendant or one for whose conduct he is legally responsi­ble knowingly caused bodily harm to Michelle Ray; and 

Second proposition:  that the defendant did so while on or about a public place of amuse­ment.

Third proposition:  that the defendant was not justified in using the force which she used.

If you find from your consideration of all the evidence that each one of these propo­sitions has been proven beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propo­sitions has not been proved beyond a reason­able doubt, you should find the defendant not guilty."  

See IPI Criminal 3d No. 11.16.

During deliberations, the jury sent an inquiry to the trial judge.  The trial judge's discussion with the attorneys concerning the inquiry was as follows:

"THE COURT:  The note which I am marking as Court's Exhibit 1 states:  [']Your Honor, twelve out of twelve agree to meeting the following propositions:  one, defendants knowingly caused harm to Miss Ray; two, did the above in a public place of amusement; three, degree of force was not justified.  Realizing this indicates aggravated battery, do we have the option of downgrading to a charge of battery?[']

What would you like me to respond, [defendant's attorney]?

[DEFENDANT'S ATTORNEY]:  Well, I mean I think the answer to the question is yes, under--you know, they can do whatever they decide to do unanimously.

THE COURT:  But they have already said they found them guilty of aggravated battery in a public place of amusement.

[DEFENDANT'S ATTORNEY]:  But also indi­cated they don't feel that is a just verdict, but that's reading between the lines; and jury nullification is an appropriate--

THE COURT:  May I point out that had we instructed as I indicated we should, we might not be having this problem at this point?

[Prosecutor], what do you propose I respond?

[PROSECUTOR]:  Your Honor, I think that they've got the verdicts back there.  If they want to come back with a battery, they can elect to do that; and I don't think we should advise them one way or other which verdict form they should use.

THE COURT:  What they just said to me--[prosecutor], let me read it again.  Defen­dants knowingly caused harm to Miss Ray.  They did it in a public place of amusement.  It was not justified.  They realize this constitutes aggravated battery, and they want to know that even though they find proposition 1, 2, and 3, can they find--can they downgrade to bat­tery.  That's against my instructions.

[PROSECUTOR]:  That's right.

THE COURT:  So I am going to indicate no in response to the question.

[DEFENDANT'S ATTORNEY]:  Then that would be a response over our objection.

THE COURT:  Yes, over defendant's objec­tion." 

The determination of whether to issue supplemental instructions in response to an inquiry from the jury rests in the discretion of the trial court, and the trial court has a duty to provide supplemental instructions where clarification is requested, the original instructions are incomplete, and the jurors are manifestly confused.  
People v. Oden
, 261 Ill. App. 3d 41, 45-46, 633 N.E.2d 1385, 1389 (1994).

"[T]he general rule is that the trial court has a duty to provide instruction to the jury where it has posed an explicit ques­tion or requested clarification on a point of law arising from facts about which there is doubt or confusion.  (
Reid
, 136 Ill. 2d at 39.)  This is true even though the jury was properly instructed origi­nally.  (See 
People v. Morris
 (1980), 81 Ill. App. 3d 288, 290-91.)  When a jury makes explicit its diffi­culties, the court should resolve them with specificity and accuracy (
Bollenbach v. Unit­ed States
 (1945), 326 U.S. 607, 612-13, 90 L. Ed. 350, 354, 66 S. Ct. 402, 405; 
People v. Cabal­lero
 (1984), 102 Ill. 2d 23, 42; see 
People v. Harmon
 (1968), 104 Ill. App. 2d 294, 301, relying on 23A C.J.S. 
Crimi­nal
 
Law
 §1376, at 305 (1989)).  If the ques­tion asked by the jury is unclear, it is the court's duty to seek clari­fication of it.  (See 
People v. Land
 (1975), 34 Ill. App. 3d 548, 550-51; 
Harmon
, 104 Ill. App. 2d at 301.)  The fail­ure to answer or the giving of a response which provides no answer to the particular question of law posed has been held to be prejudicial error."  
People v. Childs
, 159 Ill. 2d 217, 228-29, 636 N.E.2d 534, 539 (1994).

These principles have recently been reaffirmed by the Supreme Court of Illinois.  
Cortes
, 181 Ill. 2d at 280, ___ N.E.2d at ___.

The trial court in this case did comply with 
Childs
 by giving a direct response to the question, and defendant's counsel objected to that response.  On appeal, defendant argues that the trial court's response negated the jury's power of "nullification" or "lenity."

Although jury nullification is a possibility (see 
People v. Ganus
, 148 Ill. 2d 466, 473, 594 N.E.2d 211, 215 (1992)), the defendant has no right to argue or instruct on jury nullifica­tion (
People v. Moore
, 171 Ill. 2d 74, 109-10, 662 N.E.2d 1215, 1231-32 (1996)).  We also agree with the statement in 
People v. Montanez
, 281 Ill. App. 3d 558, 565, 667 N.E.2d 548, 553 (1996), "The power of jury nullification exists, but it is not authorized by the law.  A defendant has no right to have the jury defy the law or ignore the undisputed evidence."  The question indicated all 12 jurors agreed that all the elements of aggravated battery had been proved.  The answer given by the trial court to the jury's inquiry in this case was direct and simply para­phrased an instruc­tion already given to it.

"If you find from your consideration of all the evidence that each one of these propo­si­tions has been proven beyond a reasonable doubt, you should find the defendant guilty." 

See IPI Criminal 3d No. 11.16.  Furthermore, the jurors were provided three verdict forms:  (1) not guilty, (2) guilty of aggravated battery, and (3) guilty of battery.  They were instruct­ed to select the verdict form which reflected their verdict as to defendant.  IPI Criminal 3d No. 26.01.  In addition, they were advised that the jury instruc­tions contained the law applicable to this case and that it was their duty to follow all the instructions and not to disregard some.  IPI Criminal 3d No. 1.01.  In this case, the response given by the trial judge to the jury's inquiry was the correct response in light of the objection raised by defendant.  The trial court's response clarified the confusion.  That response did not result from an abuse of discre­tion.

The judgment of the circuit court of Sangamon County is affirmed, and the cause is remanded for a limited fitness hearing to determine defendant's fitness to stand trial.  If the trial court determines the defendant's medications compromised her ability to understand the nature and purpose of the proceedings against her or her ability to assist in her defense, the conviction is to be vacated and defendant given a new trial.  If the trial court determines that defendant was fit to stand trial, the trial court is directed to enter a retrospective fitness finding, and defendant's conviction and sentence will stand.

Affirmed and remanded with directions.

GREEN, J., concurs.

STEIGMANN, J., specially concurs.

JUSTICE STEIGMANN, specially concurring:

Although I agree with the majority opinion, I write specially to express my rejection of the legitimacy of the concept of jury nullification.  However much surface appeal that concept may have, careful analysis shows it to be vacuous and intellectu­ally bankrupt.

Jury nullification constitutes the propo­sition that the jury may disregard the law as provided by the trial court and instead decide a case based upon consider­ations that have no legal justifica­tion, such as the race, character, or status of either the victim or the accused.  Supporters of jury nullifica­tion cite instances in which juries have supposedly achieved "true justice" by acquitting a defen­dant when the evi­dence conced­ed­ly proved him guilty beyond a reason­able doubt.  Leaving aside the many flaws in such exam­ples, the primary difficulty with the concept of jury nulli­fica­tion is that no princi­pled basis exists for claim­ing that a jury may choose to disre­gard the court's in­struc­tions on the law 
only
 when such disre­gard bene­fits the accused.

In every criminal case, the trial court instructs the jury on principles of law that are designed to protect the accused, such as the following:  (1) the defen­dant is pre­sumed innocent of the charge against him, and the State has the burden of proving the charge beyond a reasonable doubt (Illinois Pattern Jury Instruc­tions, Criminal No. 2.03 (3d ed. 1992) (hereinafter IPI Criminal 3d)); (2) the defen­dant is not required to prove his innocence (IPI Criminal 3d No. 2.03); (3) if the defendant does not testify, that fact may not be consid­ered against him in any way (IPI Criminal 3d No. 2.04); and (4) neither sympa­thy nor preju­dice should influence the jury (IPI Criminal 3d No. 1.01).  

In almost all criminal cases, the trial court also instructs the jurors that they should not discuss the case with anyone or attempt to do any investiga­ting them­selves, such as going to the scene of the crime and examining it.  The court further instructs the jury not to read any newspa­per accounts or listen to any media reports regarding the case on trial.  The court also tells the jury that it should decide the case based solely upon the evidence and testi­mony presented in the court­room and not on extraneous matters.  See IPI Crimi­nal 3d No. 1.01.

In addition to instructing the jury regard­ing things it must do or avoid doing to protect the defendant's rights, the trial court also defines the offense with which the defen­dant is charged and the State's burden of proof regard­ing the ele­ments of that offense.  For in­stance, the bur­glary issues in­struc­tion, which sets forth the three proposi­tions that the State must prove, con­cludes with the follow­ing two paragraphs (which are the 
same
 
concluding
 
para­graphs
 in all but a few of the many dozen issues in­structions contained in IPI Crimi­nal 3d):

"If you find from your consid­eration of all the evidence that each one of [the previ­ously stated] pro­positions has been proved be­yond a reason­able doubt, you should find the de­fen­dant guilty.

If you find from your consider­ation of all the evidence that any one of these pro­positions has not been proved beyond a rea­sonable doubt, you should find the defendant not guilty."  IPI Criminal 3d No. 14.08.

Supporters of jury nulli­fi­ca­tion think the second of these paragraphs--the one instructing the jury that it must find the defendant not guilty if the State did not prove him guilty beyond a reasonable doubt--is just fine.  Somehow, however, those same supporters claim that a jury may disregard the first para­graph of this in­struc­tion.  But why should this be so?  After all, if a jury is free to use its status as "repre­sen­tative of the communi­ty" or "the community's conscience" (or whatever else supporters of jury nulli­fi­ca­tion claim gives the jury the prerog­a­tive to reject the trial court's instructions of law), then should the jury not be able to ques­tion 
any
 in­struc­tion that it finds ques­tion­able or archa­ic?  

For instance, why should a jury accept the trial court's admonition that the defendant's failure to testify should not be held against him?  Clearly, this admoni­tion is counterintuitive.  Most jurors would expect in their daily lives that someone accused of criminal behavior would provide some defense or explanation.  Most jurors would also conclude that a person's failure to provide some expla­nation would indicate that he was guilty of the charge.   In fact, this real-world expectation is the law in almost every other jurisdiction in the world; it just so happens that in the United States, our courts have interpreted the fifth amend­ment to proscribe such an expectation by holding that a defen­dant cannot be punished for exercising his constitu­tional right of silence, even at trial.  But, if--as the supporters of jury nullification contend--a jury can reject the trial court's instructions of law, what can be wrong with a juror's think­ing the follow­ing:  

"Not holding a defendant's failure to testify against him might have worked just fine 200 years ago when a bunch of rich, white guys wrote that protection into the Constitu­tion to deal with the kinds of crimes and trials that occurred then, but clearly this archaic bit of colonial fluff has no legitimacy in the modern world of urban vio­lence and street gang mur­ders.  It is a concept that has out­lived its useful­ness, and if it were­n't for a bunch of bleeding-heart ACLU-types, we would have gotten rid of it a long time ago so that we could real­ly get tough on vicious crim­inals." 

 I note in passing that the above argument might be particu­lar­ly shocking to those who--in other contexts--endorse the concept of a "living constitu­tion"--that is, the meaning of the con­sti­tu­tion must "evolve" over time to meet the exigen­cies of modern society.  Adher­ents of this view typi­cally argue for a more expansive reading of the consti­tution, claim­ing that politi­cal posi­tions the adher­ents deem desir­able are re­quired or protected by the constitution.  Howev­er, no princi­pled reason exists to limit the notion of a living consti­tu­tion to only 
expan­sion
 of constitu­tional rights; if the consti­tu­tion is as flexi­ble as the adherents of the "living constitu­tion" assert, then it can just as well diminish the protections it provides (if that is what modern society requires).  Indeed, many legal schol­ars argue that such a reduction has already oc­curred regard­ing fourth amend­ment protec­tions.  

Another trial court instruction that a juror might question or disregard is the State's burden to prove the defen­dant guilty beyond a reasonable doubt.  After all, this stan­dard does not even appear any­where in either the federal or state consti­tu­tion.  In­stead, the United States Supreme Court has found this standard to be consti­tution­ally mandated by looking to the history and tradi­tions of this nation almost 210 years ago when the constitu­tion was adopted.  But so what?  Why should a jury, acting as the modern day "con­science of the commu­nity," be limited in its real-world assessment of an accused's conduct by an "understanding" among a bunch of Virginia planta­tion owners and New England merchantmen, who were running around in three-cor­nered hats, frequently owned slaves, and observed other customs and practices that would be viewed as highly objection­able--or at least very strange--through modern eyes?   

It will not suffice for supporters of jury nulli­fi­ca­tion to point out that when a jury disregards the trial court's instruc­tions and ac­quits, the State cannot appeal, whereas when a jury disregards the trial court's instruc­tions and con­victs, the defendant can appeal.  First, the defendant's right to appeal on the basis of jury delibera­tions is ex­tremely re­strict­ed.  
People v. Towns
, 157 Ill. 2d 90, 112, 623 N.E.2d 269, 279 (1993) (in evaluating a verdict's validity, a reviewing court may not consid­er evi­dence showing jury's delib­er­a­tive process or its motives or methods in reaching the verdict); 
People v. Lee
, 294 Ill. App. 3d 738, 744-45, 691 N.E.2d 117, 122 (1998) (jurors' affidavits in armed robbery case that they disregarded court's instructions not to consider during deliberations presecutor's improper argument constituted improper effort to impeach jury's verdict).  Thus, a defen­dant who pres­ents affida­vits or live testi­mony from a juror about the jury's disregard of the court's instruc­tion not to hold against the defendant his failure to testify will lose on this claim because a jury is not permit­ted to impeach its own ver­dict.  The same thing would happen to other claims, such as that the jury disre­garded the defendant's pre­sumption of inno­cence or inten­tionally less­ened the State's burden of proving him guilty beyond a reason­able doubt.

Second, a defendant's appeal on this ground is premised upon a juror's willingness to talk about the jury deliberations and to admit that he or some other juror disregarded some of the court's in­struc­tions.  Howev­er, jurors are under no obligation to speak to anyone about jury room discus­sions, and one could assume they would be particularly unlikely to do so if they had inten­tionally disregarded some of the court's instructions designed to provide procedural protec­tions to the defendant, resulting in the defendant's conviction.  

The historical circumstances that allegedly justi­fied the concept of jury nullification have long since passed.  Justice Harlan explained this best, as follows:  

"[The] principal original virtue of the jury trial--the limitations a jury impos­es on a tyrannous judiciary--has largely disappeared.  We no longer live in a medieval or colonial soci­ety.  Judges enforce laws enacted by demo­cratic decision, not by regal fiat.  They are elected by the people or appointed by the people's elected officials, and are responsi­ble not to a distant monarch alone but to reviewing courts, including this one."  
Duncan v. Loui­siana
, 391 U.S. 145, 188, 20 L. Ed. 2d 491, 518, 88 S. Ct. 1444, 1469 (1968) (Harlan, J, dissenting, joined by Stewart, J.).

These views are consistent with long-held views of other Supreme Court justices on point.  At a time when Supreme Court justices served as trial judges, Justice Joseph Story wrote the following:  

"'I deny that, in any case, civil or criminal, [jurors] have the moral right to decide the law according to their own notions or plea­sure.  On the contrary, I hold it the most sacred constitutional right of every party accused of a crime that the jury should re­spond as to the facts, and the court as to the law.  It is the duty of the court to instruct the jury as to the law and it is the duty of the jury to follow the law as it is laid down by the court. ***  Every person accused as a criminal has a right to be tried according to the law of the land, the fixed law of the land; and not by the law as a jury may under­stand it, or choose, from wanton­ness or igno­rance or accidental mistake, to interpret it.'"  
Sparf & Hansen v. Unit­ed States
, 156 U.S. 51, 74, 39 L. Ed. 343, 351, 155 S. Ct. 273, 282 (1895), quot­ing 
United States v. Battiste
, 24 Cas. 1042, 1043 (C.C.D. Mass. 1835) (No. 14,545).  

As Professor Andrew D. Leipold of the University of Illinois pointed out in his thoughtful article, 
Rethinking
 
Jury
 
Nullification
, 82 Va. L. Rev. 253, 294 (1996):             

"Virtually every federal court that consid­ered the question [of jury nullification] held, often in blunt language, that there was no right to have juries told of their power.  The most detailed opinion came in 
United States v. Dougherty
[, 473 F.2d 1113 (D.C. Cir. 1972), quoting 
United States v. Moylan
, 417 F.2d 1002, 1009 (4th Cir. 1969),] where the court not only re­ject­ed the defendants' argu­ments, but de­nounced the whole notion of jury nulli­fica­tion:  

'This so-called right of jury nul­li­fication is put forward in the name of liberty and democracy, but its explicit avowal risks the ulti­mate logic of anarchy. . . .  "No legal system could long survive if it gave every individual the option of dis­regarding with impuni­ty any law which by his personal standard was judged morally untena­ble."'"

Regarding the claim of supporters of jury nulli­fica­tion that juries somehow constitute "representatives of the communi­ty," Professor Leipold cogently wrote the following:

"A jury is unelected, unaccountable to a constituency, and only oblique­ly a  'representative' of the area from which it is drawn.  A jury need not represent a cross-section of the citizenry; the panel does not have to reflect the community's racial, gen­der, economic, or ethnic make-up; and some groups are routinely ex­cluded from service by law or by practice.  There is no reason to think that jurors know more than the average citizen about the impact of a criminal law on the community, and some reason to believe that they know less.  And of course, jurors are strictly forbidden to discuss the case they are hearing with their neighbors, or otherwise to collect information on how the community feels before rendering a verdict."  82 Va. L. Rev. at 299.

Last, we should not forget the disgraceful episodes in our criminal justice system in the 1950s and 1960s when southern juries routinely acquitted those accused--including local law enforcement officers--of beating or killing civil rights protest­ers despite overwhelming evidence of guilt.  With good reason, supporters of jury nullification choose not to remind us of those grim times, but those acquittals reflected the concept of jury nullification "in all its glory."

This court should join the other Illinois courts that have rejected this pernicious doctrine (see 
People v. Montanez
, 281 Ill. App. 3d 558, 565, 667 N.E.2d 548, 553 (1996)) and emphasize that it has no place in any system of justice worthy of that name.